Below is an opinion of the court.

_David W. Hercher_
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | |
| **Joshua Eugene Vibbard** and **Michelle Renee Vibbard,** | Case No. 21-31984-dwh7 |
| Debtors. | CORRECTED MEMORANDUM DECISION GRANTING MOTION FOR CONTEMPT AGAINST PORTLAND ADVENTIST MEDICAL CENTER |

## I.  Introduction[1], [2]

The chapter 7 debtors, Joshua Eugene Vibbard and Michelle Renee

Vibbard, have moved to hold in contempt Portland Adventist Medical Center

for violating both the automatic stay and the discharge injunction by mailing

---

[1] This disposition is specific to this action. It may be cited for whatever persuasive value it may have.

[2] This memorandum makes several nonsubstantive corrections of typographical errors in the original memorandum, ECF No. 33, and on page 8 in the penultimate line of part F, "2021" has been corrected to "2022."

Page 1 – CORRECTED MEMORANDUM DECISION GRANTING etc.

to Michelle 10 postpetition statements for prepetition debts. After taking evidence at a prove-up hearing, and for the reasons that follow, I will grant the motion in part and award $13,550 and attorney fees.

Because the Vibbards share a last name, I refer to them by their first names. I refer to Portland Adventist Medical Center as PAMC.

## II.    Facts

The Vibbards filed their chapter 7 petition on September 23, 2021.

### A.    *Prepetition services to Michelle*

The debts that are the subject of the contempt motion arose from surgery and physical therapy that Michelle received at PAMC's location in Portland, Oregon.

### B.    *Schedules; notices of bankruptcy and discharge order*

The Vibbards included in their schedule of unsecured creditors a $130 debt to "Adventist Health Medical Group, 10123 SE Market Street, Portland, OR 97216."[3]

The bankruptcy notice was mailed to creditors on September 25.[4] It is on Official Form 309A and includes a prescribed paragraph describing the automatic stay of 11 U.S.C. § 362(a). (Other references below to sections are also to sections of title 11.)

---

[3] ECF No. 1, Sched. E/F item 4.1.
[4] ECF No. 9.

Page 2 – CORRECTED MEMORANDUM DECISION GRANTING etc.

The discharge order was entered on December 21 and was mailed to creditors on December 24.[5] It includes an eight-paragraph description of the discharge and its effect on creditors.

### C.   *Postpetition statements*

### 1.   **Statements before November 12**

On October 4, nine days after the mailing of the bankruptcy notice, "Adventist Medical Center Portland" issued a statement for $141.27, referring to a service date of July 11, 2021, and "encounter number 74-3."[6] In a red banner, the statement said, "there is a remaining balance on this account which is your responsibility. If you are having difficulty making this payment there may be help available. Please contact us to make payment." That statement and others described below issued by Adventist Medical Center Portland included the address "PO BOX 16800, PORTLAND, OR 97292" and identified the service location as "ADVENTIST HEALTH PORTLAND." That statement and the other nine described below were mailed to and received by Michelle.

On October 14, Adventist Medical Center Portland issued a statement for $70.27, referring to the same July 7 service date but encounter number 74-4.[7] It included the same red-banner language as the October 4 statement.

---

[5] ECF No. 18.
[6] ECF No. 29-5, Ex. E at 1.
[7] ECF No. 29-5, Ex. E at 2.

Page 3 – CORRECTED MEMORANDUM DECISION GRANTING etc.

On October 26, Adventist Health Medical Group, with an address in California, issued a statement for $127.75, referring to a service date of March 12, 2021.[8] That name is the one the Vibbards listed in their debt schedule. That statement and others described below from Adventist Health Medical Group also used the name "Adventist Health Medical Clinics."

On November 2, Adventist Medical Center Portland reissued its October 4 statement, but the red-banner language had changed to—

> FINAL NOTICE. Our records indicate that this account balance remains unresolved. Please mail the above balance in full within thirty (30) days from the date of this statement. This statement represents our final correspondence concerning this account. Failure to resolve this account balance may result in our assigning this account to third party collections which may impact your credit score. Additional extraordinary collection actions may be applied (e.g., legal or judicial process).[9]

On November 9, Adventist Medical Center Portland issued a statement for $35.08, referring to service dates of June 17 and 18, 2021, with encounter number 238.[10] It contains the same red-banner "final notice" language that's in the November 2 statement.

### 2. Letter from Vibbards' lawyer

On November 12, a paralegal at the Vibbards' lawyer's law firm wrote to "Adventist Health Medical Clinics, Patient Accounts-Bankruptcy, PO Box 16800, Portland OR 97292-0900." That name and post office box number

---

[8] ECF No. 29-5, Ex. E at 3.
[9] ECF No. 29-5, Ex. E at 4.
[10] ECF No. 29-5, Ex. E at 5.

Page 4 – CORRECTED MEMORANDUM DECISION GRANTING etc.

appear on the Adventist Medical Center Portland statements. The letter described the petition, the automatic stay, and "a bill for demand of payment" that the Vibbards had recently received. The letter stated that any future contact with the Vibbards, attempts to collect, or "selling of the account" would violate the stay and result in an action for damages and attorney fees.[11]

### 3. Post-November 12, pre-December 23 statements

On November 15, Adventist Medical Center Portland reissued its October 14 statement.[12] It also contains the same red-banner "final notice" language that's in the November 2 and 9 statements.

On November 23, Adventist Health Medical Group issued a statement for $100, referring to a service date of August 11, 2021. That statement was reissued on December 21.[13]

### 4. The December 23 discharge mailing

On December 23, the discharge order was mailed to creditors.

### 5. Post-December 23 statements

On January 24, a debt collector, Computer Credit, Inc., issued a validation notice, referring to Adventist Health Medical Group and a debt of $100.[14] Although the validation notice doesn't look like the other statements, it

---

[11] ECF No. 29-3, Ex. C.
[12] ECF No. 29-5, Ex. E at 6.
[13] ECF No. 29-5, Ex. E at 7.
[14] ECF No. 29-5, Ex. E at 10.

Page 5 – CORRECTED MEMORANDUM DECISION GRANTING etc.

includes the statements "You have a balance with Adventist Health Medical Group" and "Total Amount of the debt due now" ($100). The notice also says that "we must stop collection" only if Michelle writes to Computer Credit within 30 days to ask for the name and address of the original creditor or to dispute all or part of the debt.

On February 7, Computer Credit issued a collection notice to Michelle, also referring to Adventist Health Medical Group and the same $100 debt amount. That notice requested payment to Adventist Health Medical Group at the same California address that appeared on the earlier statements from Adventist Health Medical Group.[15]

### D. *The statements' effect on Michelle*

Michelle testified that she was concerned about what to do about Portland Adventist prepetition bills that were still coming to her but that she couldn't afford to pay. She thought that getting bills for prebankruptcy debts should be over when you file for bankruptcy. The stress of receiving the bills upset her. She sought medical treatment for stress. Her physician suggested that she see a counselor, but she couldn't afford that. She felt that Portland Adventist didn't care that she had filed for bankruptcy and didn't care that it was hurting her emotionally. She was being harassed by Portland Adventist for money that she didn't have to give them. She felt like she hadn't received a fresh start. Portland Adventist wouldn't stop unless she took court action.

---

[15] ECF No. 29-5, Ex. E at 9.

Page 6 – CORRECTED MEMORANDUM DECISION GRANTING etc.

Joshua, Michelle's husband, testified that she was upset every time she opened bills from Portland Adventist. She felt stressed and had a hard time sleeping at night, became moody and angry with him and their children; he and the children then would need to go for a walk to let her cool down. She had previously been happy-going and excited to hang out with him and the children. She would regularly call her mother to discuss her concerns about receiving the bills. Joshua would distract the children during those calls.

Pamela Thompson, Michelle's mother, testified that Michelle was upset when she received the notices and discussed her feelings by telephone with Thompson quite a few times. Michelle described the statements as saying she owed money after the bankruptcy. When Michelle called Thompson to discuss the statements, Michelle was sometimes crying and other times near tears. Michelle was very upset because she didn't know what to do next or how to take care of the problem. Michelle was usually a happy-go lucky person, full of life, happy, and unstressed. But when she phoned about the statements, she sounded very stressed and upset to Thompson. Sometimes Michelle said that she felt sick to her stomach and didn't know what to do. Thompson had herself gone through bankruptcy and told Michelle that bankruptcy should make bills go away. Thompson told Michelle to get ahold of her lawyer.

### E. Filing and service of the contempt motion

On May 2, the contempt motion was filed and mailed by first-class mail to three addresses, two of which were by mailings directed to "Adventist

Page 7 – CORRECTED MEMORANDUM DECISION GRANTING etc.

Health," the first at "PO Box 16800, Portland OR 97292-0900" and the second to 10123 SE Market, Portland, OR 97216." The third mailing was addressed to "Portland Adventist Medical Center, c/o Kyle King, President, 10123 SE Market, Portland, OR 97216." The post office box is from the Adventist Medical Center Portland statements, and the street address is in the schedule for Adventist Health Medical Group.

The motion was accompanied by a notice of motion requiring that any objection be filed within 14 days. PAMC did not object or otherwise respond.

### F.    *Hearing notices*

The initial hearing on the motion was on May 31, 2022.[16] Notice of that hearing included a "re:" line identifying PAMC as the target of the contempt motion, and the notice was mailed to the same three addresses to which the motion was mailed.[17] Only the Vibbards' lawyer attended. The court then set a prove-up hearing for July 14, 2022, at which only the Vibbards and Michelle's mother testified. PAMC did not participate.

### G.    *Status of Adventist Health Medical Group*

The Vibbards provided evidence that the Oregon Secretary of State's website identifies Adventist Health Medical Group as an assumed business name of PAMC, with the address 1023 S.E. Market Street, Portland, Oregon

---

[16] ECF No. 25.
[17] ECF No. 26.

97216. That address is in the schedule for Adventist Health Medical Group and is one of the three addresses to which the motion was mailed.

## III. Analysis

### A. *Creditor names on the statements*

Because Michelle received the services leading to the statements only at the facility operated by PAMC, I infer that the statements from Adventist Medical Center Portland, which state that the service location was "Adventist Health Portland," are in fact from PAMC.

And because Adventist Health Medical Group is an assumed business name of PAMC, the statements from or on behalf of Adventist Health Medical Group were by or on behalf of PAMC.

Thus, all the statements were from or on behalf of PAMC.

### B. *Stay and discharge injunction*

Under section 362(a)(6), the automatic stay bars any act to collect a prepetition debt. In a chapter 7 case, the stay continues through entry of the discharge.[18]

With irrelevant exceptions, a chapter 7 discharge discharges all prepetition debts.[19] A discharge enjoins any act to collect a discharged debt.[20]

Thus, after the petition date, with irrelevant exceptions, an act to collect a prepetition debt violates either the stay or the discharge injunction.

---

[18] Section 362(c)(2)(C).
[19] Section 727(b).
[20] Section 524(a)(2).

Page 9 – CORRECTED MEMORANDUM DECISION GRANTING etc.

### C. Remedies

#### 1. Remedies under section 362(k)(1) for stay violation

Under section 362(k)(1), a bankruptcy court may remedy a willful stay violation suffered by an individual by awarding actual damages, costs, and attorney fees and, in appropriate circumstances, punitive damages. A stay violation is willful if the violator knew of the stay and intentionally took the violative actions.[21] Knowledge of the bankruptcy filing is knowledge of the stay.[22]

Actual damages recoverable under section 362(k)(1) include those for emotional distress.[23] To recover for emotional distress, an individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the stay, as distinct, for example, from the anxiety and pressures inherent in the bankruptcy process. Fleeting or trivial anxiety or distress does not support an award. Nonexperts, such as family members, may testify to manifestations of mental anguish and clearly establish that significant emotional harm occurred.[24]

---

[21] Havelock v. Taxel (*In re* Pace), 67 F.3d 187, 191 (9th Cir. 1995); Goichman v. Bloom (*In re* Bloom), 875 F.2d 224, 227 (9th Cir. 1989).
[22] Knupfer v. Lindblade (*In re* Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003); Carroll v. Tri-Growth Centre City, Ltd. (*In re* Carroll), 903 F.2d 1266, 1272 (9th Cir. 1990).
[23] Dawson v. Washington Mutual Bank (*In re* Dawson), 390 F.3d 1139, 1148 (9th Cir. 2004), *cert. denied* 546 U.S. 927 (2005).
[24] Id. at 1149.

An award of punitive damages requires some showing of reckless or callous disregard for the law or rights of others.[25] In the common law, the purposes of punitive damages are "to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future."[26]

## 2. Contempt remedies

Under section 105(a), a bankruptcy court may issue any order necessary to carry out provisions of title 11. That section authorizes orders of civil contempt.[27]

A party may be held in contempt if it violates a specific and definite court order, and the violation is proved by clear and convincing evidence.[28] Both the automatic stay[29] and the discharge injunction[30] have been treated as specific and definite court orders.

### (a) *Knowledge of the stay and discharge order*

The willfulness standard for imposing stay-violation sanctions under section 362(k)(1) also applies to holding a stay violator in contempt.[31]

---

[25] Snowden v. Check Into Cash of Wash., Inc. (*In re* Snowden), 769 F.3d 651, 657-58 (9th Cir. 2014) (quoting *Bloom*, 875 F.2d 224 at 228).

[26] Smith v. Wade, 461 U.S. 30 (1983), citing Restatement (Second) of Torts § 908(1) (1977).

[27] Walls v. Wells Fargo Bank, 276 F.3d 502, 510 (9th Cir. 2002).

[28] Renwick v. Bennett (*In re* Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002).

[29] *Dyer*, 322 F.3d at 1191.

[30] *Walls*, 276 F.3d at 507.

[31] *Dyer*, 322 F.3d at 1191.

Page 11 – CORRECTED MEMORANDUM DECISION GRANTING etc.

Similarly, a party may be held in contempt of the discharge injunction if it knew of the discharge and intended the violative conduct.[32]

In the Ninth Circuit Court of Appeals' 2003 decision in *Knupfer v. Lindblade (In re Dyer)*,[33] it considered whether to uphold stay-violation sanctions against a creditor and his lawyer who "both knew of the bankruptcy but 'may not have been familiar with that particular Code provision,'" section 362(a). The complaining party in *Dyer* was the chapter 7 trustee, who was not an "individual" entitled to relief under section 362(k)(1) because any harm from the stay violation was caused to the estate, rather than the trustee personally. Acknowledging that a party knowing of a bankruptcy is charged with knowledge of the stay for purposes of section 362(h) (which is now section 362(k)(1)), the court "hesitate[d] to extent that principle to the contempt context" because "[g]enerally, a party cannot be held in contempt for violating an injunction absent knowledge of that injunction."[34] The *Dyer* decision does not state whether the creditor was listed in the debtor's debt schedule and thus should have received the bankruptcy notice, with its description of the stay. Instead, the decision describes the creditor's allegation of ignorance of the bankruptcy when the stay violation occurred.

---

[32] *Bennett*, 298 F.3d at 1069.
[33] 322 F.3d 1178, 1191 (9th Cir. 2003).
[34] *Dyer*, 322 F.3d at 1191-92.

Page 12 – CORRECTED MEMORANDUM DECISION GRANTING etc.

Three years later, in the Ninth Circuit's decision in *ZiLOG, Inc. v. Corning*,[35] the court held that a finding that a party knew of the stay or discharge injunction must be made after an evidentiary hearing, rather than presumed as a matter of law, but the finding can be inferred from evidence that the creditor knew of the bankruptcy.

### (b)   *Compensatory sanctions*

I agree with the Ninth Circuit Bankruptcy Appellate Panel that compensatory contempt sanctions should include the emotional-distress damages recoverable for a stay violation.[36]

### (c)   *Noncompensatory sanctions*

A bankruptcy court can impose a civil noncompensatory contempt sanction only if the sanction is designed to coerce compliance with a court order.[37] Even a relatively small fine (a synonym for noncompensatory sanction) may be criminal, and thus beyond the bankruptcy court's authority, if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance and the fine is not compensatory.[38]

In the Ninth Circuit 's 2001 decision in *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,*[39] the court implied that any fine exceeding $5,000,

---

[35] 450 F.3d 996, 1008 (9th Cir. 2006).

[36] *In* re Marino, 577 B.R. 772, 787 (9th Cir. B.A.P. 2017).

[37] *Dyer*, 322 F.3d at 1192.

[38] *Dyer*, 322 F.3d at 1192; F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1137-38 (9th Cir. 2001).

[39] *Hanshaw*, 244 F.3d at 1137-38. *See also Dyer*, 322 F.3d at 1193.

Page 13 – CORRECTED MEMORANDUM DECISION GRANTING etc.

"at least in 1998 dollars," would be serious and thus criminal, but it declined to reach the question. In its 2003 *Dyer* decision, the court held that a $50,000 punitive damages awarded for contempt was intended neither to coerce compliance nor to compensate the injured party for actual damages and was thus a criminal sanction that the bankruptcy court could not impose under section 105(a).[40] The *Dyer* court also observed that "'[a] flat unconditional fine even as little as $50" could be is criminal 'if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance,' and the fine is not compensatory."[41]

Other bankruptcy judges have recognized the importance of imposing fines only when doing so could coerce compliance with court orders. In a 2018 decision, an Idaho bankruptcy judge held in *In re Pohlman* that a creditor's automatic stay violation—sending a postpetition collection letter—began and ended when the letter was sent, and imposition of fine would not encourage Code compliance, so the court declined to impose any fine.[42] In a 2016 decision, a Nevada bankruptcy judge held in *In re Martinez*[43] that the court could impose a fine for future contumacious acts, which "would have the coercive effect of encouraging compliance with the court's order," but

---

[40] *Dyer*, 322 F.3d at 1193.
[41] Id. at 1192, quoting Hanshaw, 244 F.3d at 1138, in turn quoting International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821 (1994).
[42] No. 16-01332-JMM, 2018 WL 3854137, at *8 (Bankr. D. Idaho Aug. 10, 2018).
[43] 561 B.R. 132, 173 (Bankr. D. Nev. 2016).

Page 14 – CORRECTED MEMORANDUM DECISION GRANTING etc.

imposing a fine for past conduct "serves none of the purpose of a civil contempt remedy."

### D. *Michelle is entitled to relief under section 362(k)(1).*

#### 1. PAMC willfully violated the stay.

The predischarge statements were acts by PAMC to collect prebankruptcy debts and thus violated the stay. PAMC received the bankruptcy notice, which described the automatic stay. PAMC thus had knowledge of the stay— a finding I base on the evidence and do not presume as a matter of law. I infer that PAMC issued the statements intentionally, rather than by accident. PAMC thus violated the stay willfully.

#### 2. Michelle is entitled to actual, emotional-distress damages under section 362(k)(1).

Michelle was entitled to the protection of the stay and discharge injunction and to be protected from receiving PAMC's postpetition statements attempting to collect prepetition debts. Her receipt of the invoices caused her actual emotional damages. The evidence clearly establishes that her receipt of the statements caused her significant emotional stress distinct from the anxiety and pressures inherent in the bankruptcy process. Receiving the statements was inconsistent with her understanding that the bankruptcy would protect her from collection by PAMC. The stress interfered with her relationships with her children and husband, Joshua. The harm was not just trivial nor fleeting anxiety or distress. She consulted her doctor about the stress. The doctor advised her to pursue counseling for the stress, but she

Page 15 – CORRECTED MEMORANDUM DECISION GRANTING etc.

couldn't afford it. Her emotional injury was corroborated by testimony of family members Thompson and Joshua. Michelle thus suffered actual injury.

In the motion, the Vibbards requested total compensatory damages of $15,000, but at the hearing, they requested $1,000 per statement.

In quantifying the actual emotional-distress damages Michelle suffered, I consider the different language of the statements in determining how seriously she took a particular statement to be a precursor to unexpected and unwelcome collection activity. Of the eight predischarge statements, three (October 26, November 23, and December 21) were simple—but violative—statements, two (October 4 and 14) included red-banner language consistent with a balance due, such as is used after partial payment by an insurer, and three (November 2, 9, and 15) included ominous "final-notice" language. Of the latter three, two just were mailed 10 and three days before the letter, and the third was mailed three days after the letter. It's likely that at least one if not both of the November 2 or 9 final-notice letters motivated Michelle to ask for help from her lawyer's law firm, leading to the letter.

For the predischarge statements, I will award actual damages of $6,250: $500 for each of the two simple statements, $750 for each of the three red-banner balance-due statements, and $1,000 for each of the three red-banner, final-notice statements.

### 3.     Michelle is entitled to punitive damages under section 362(k)(1).

Considering just what happened before the stay terminated on entry of the discharge, PAMC failed, after it received the Vibbards' bankruptcy notice, to adjust its statement-issuance system to prevent mailing to Michelle eight postpetition statements, and it compounded its violation by mailing two of those even after receiving the law firm's warning letter. That failure constitutes reckless or callous disregard of the law and Michelle's rights to be free of illegal postbankruptcy collection efforts.

In the motion, the Vibbards requested punitive damages of $45,000. That amount is excessive under the circumstances.

In a 2020 decision by another judge of this court addressing stay violations, *In re Freeland,* punitive damages had been awarded against the creditor for stay violations in two prior cases, one in which the per-violation award was $1,000 and an even earlier case in which the per-violation award was $500. In other words, earlier awards of up to $1,000 per violation hadn't gotten the creditor's attention. The judge awarded punitive damages of $5,000 and actual damages of $9,250 for nine phone calls and a collection letter.[44]

Here, unlike in *Freeland*, I have no evidence that PAMC has acted in other bankruptcy cases as it has acted here. I will award Michelle punitive

---

[44] No. 19-32309-PCM7, 2020 WL 4726580 (Bankr. D. Or. Aug. 12, 2020).

damages of $4,800, $600 for each of the eight predischarge statements. That amount should suffice both to appropriately punish PAMC for its outrageous conduct and deter it and others from future similar conduct.

> **4.      Michelle is entitled to recover attorney fees under section 362(k)(1).**

Because Michelle is entitled to an award of actual damages under section 362(k)(1), she is also entitled to an award of attorney fees to the extent the motion addresses the predischarge statements. Those fees may be sought after entry of the order on this decision.[45]

> ### E.      *Contempt relief*

> #### 1.      Contempt relief for the stay violations

> ##### (a)      *Contempt finding*

The automatic stay is a specific and definite order. I infer from the mailing to PAMC of the bankruptcy notice, which described the stay, that PAMC received the notice and thus had actual notice of the stay. I also infer from Michelle's receipt of the predischarge statements that PAMC intended to mail them and did not do so only by accident. Michelle has proved willful violation of the stay—the mailing of those statements—by clear and convincing evidence. PAMC is therefore in contempt of the stay.

---

[45] Fed. R. Bankr. P. 9014(b), 7054; Fed. R. Civ. P. 54(d).

Page 18 – CORRECTED MEMORANDUM DECISION GRANTING etc.

### (b) *Compensatory sanctions for the stay violations*

As I stated above, I will award Michelle actual damages under section 362(k)(1) for the predischarge statements. I could not, or at least would not exercise my discretion to, award additional compensation for those statements as a contempt sanction.

### (c) *Noncompensatory sanctions for the stay violations*

In the motion, the Vibbards requested total noncompensatory sanctions of $5,000, in addition to the $45,000 of punitive damages they requested under section 362(k)(1).

As a bankruptcy judge, I can award noncompensatory sanctions, even mild ones, only to coerce compliance with a court order. A fine is coercive only if the violator has an opportunity to reduce or avoid the fine through compliance.

Here, the automatic stay expired when the discharge was entered in December, so any further attempts to collect prepetition debts could not violate the stay, although they could and did violate the discharge injunction, addressed separately below. Because a noncompensatory contempt sanction for the stay violations could not coerce compliance with the expired stay, the sanction would be a "flat unconditional fine" that would be only punitive and thus beyond my authority, regardless of amount.

Page 19 – CORRECTED MEMORANDUM DECISION GRANTING etc.

### (d)    *Attorney fees for the stay violations*

Because Michelle is entitled to seek attorney fees to the extent the motion addressed the predischarge statements, I could not award additional attorney fees for those statements as a contempt sanction.

### 2.    Contempt relief for the discharge-injunction violations

### (a)    *Contempt finding*

The discharge injunction is also a specific and definite order. I infer from the mailing to PAMC of the discharge order, describing its effect on creditors, that PAMC received it and thus had actual notice of the discharge—a finding I base on the evidence and do not presume as a matter of law. I also infer from Michelle's receipt of the postdischarge statements that PAMC intended to issue and mail them and did not do so by accident. Each of the statements, including the validation notice, was an act to collect a prebankruptcy debt. Michelle has proved willful violation of the discharge injunction by clear and convincing evidence. PAMC is therefore in contempt of the discharge injunction.

### (b)    *Compensatory sanctions for discharge-injunction violations*

My discussion above of the damage Michelle suffered did not differentiate between the effect of the predischarge and postdischarge statements.

The two postdischarge statements, issued in violation of the discharge injunction, were from a debt collector. The first, a validation notice, implied

that collection against her was in process and would continue absent affirmative action by her.

For the same reasons that I will award actual damages for the predischarge statements, I will award Michelle compensatory contempt sanctions for the postdischarge statements. I will award her $2,500, $1,250 for each statement.

### (c) *Noncompensatory relief for the discharge-injunction violations*

As discussed above, I can award noncompensatory contempt sanctions only to coerce compliance with a court order.

Here, the last of the statements violating the discharge injunction was mailed in February, three months before the motion was filed and five months before the prove-up hearing. I heard no evidence of further statements. Thus, like the judge in *Pohlman*, I find that noncompensatory sanctions against PAMC for the postdischarge statements could not coerce compliance with the discharge injunction and thus would be only punitive and beyond my authority.

### (d) *Attorney fees for the discharge-injunction violations*

Because Michelle is entitled to an award of compensatory sanctions for the postdischarge statements, she is also entitled to an award of attorney fees to

the extent the motion addresses those statements. All fees may be sought after entry of the order on this decision.[46]

## IV. Conclusion

I will issue an order—

1. Holding PAMC in contempt for violating the automatic stay for the predischarge statements and of the discharge injunction for the postdischarge statements;

2. Awarding Michelle judgment for $13,550, the sum of—

    a. actual damages of $6,250 for the predischarge statements.

    b. punitive damages of $4,800 for the predischarge statements;

    c. compensatory contempt sanctions of $2,500 for the postdischarge statements; and

    d. no noncompensatory contempt sanctions.

3. Permitting Michelle to request an attorney-fee award under Federal Rule of Civil Procedure 54(d).

### # # #

---

[46] Fed. R. Bankr. P. 9014(b), 7054; Fed. R. Civ. P. 54(d).